People v Bellucci (2020 NY Slip Op 07215)





People v Bellucci


2020 NY Slip Op 07215


Decided on December 2, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
MARK C. DILLON
HECTOR D. LASALLE
LINDA CHRISTOPHER, JJ.


2016-08390
 (Ind. No. 384/10)

[*1]The People of the State of New York, respondent,
v
Eric Bellucci, appellant.


Janet E. Sabel, New York, NY (Natalie Rea of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island, NY (Morrie I. Kleinbart of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Richmond County (William Garnett, J.), rendered August 2, 2016, convicting him of murder in the first degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Richmond County, for further proceedings in accordance herewith.
In 2010, the defendant, a diagnosed paranoid schizophrenic, was charged with two counts of murder in the first degree in connection with the death of his parents. On four occasions over the next five years, the defendant was deemed incompetent to stand trial and was hospitalized. In June 2015, an examining expert concluded that the defendant was then competent, noting that he had been compliant with his medication since being prescribed Lithium. However, the expert stated that should the defendant become noncompliant, it was likely that he would decompensate, be unable to withstand courtroom stress, and have increased psychiatric symptoms. At a pretrial hearing on November 30, 2015, the Supreme Court stated that it found the defendant to be competent to stand trial.
On at least two subsequent occasions prior to the start of the defendant's trial in April 2016, the People joined in defense counsel's requests that the defendant undergo a new competency examination, as the defendant had become noncompliant with his medication and was not able to communicate rationally with his attorney. That there was serious reason to be concerned as to the defendant's competency is reflected in the fact that, in addition to joining in defense counsel's requests for a competency examination, the People also commenced a CPLR article 78 proceeding seeking to compel the Supreme Court to direct a new competency examination. In support of the application, the People noted that the prior finding of competency was predicated on the condition that the defendant remain medicated. The People reported that, once the defendant was relocated to Rikers Island, he refused to take his medication and there was no one at Rikers Island who could compel him to do so.
The Supreme Court denied the requests, stating that, although "[b]oth sides appear[ed] to be willing to continue [the defendant] in a cycle of psychological evaluations," the [*2]defendant had "a right to have his case resolved and not remain in Article 730 limbo."
The case proceeded to a jury trial. Despite the Supreme Court's refusal to order a competency examination and the defendant's vehement and consistent objection to his counsel presenting an insanity defense, the court stated that it was "order[ing]" defense counsel to present such a defense. The court stated that "[i]t doesn't make any sense that the law allows a defendant who is fit to proceed but who suffers from a mental illness to make the crucial strategic choice of pursuing an insanity defense." During the trial, defense counsel presented both an insanity defense, as directed by the court, and a justification defense, as directed by the defendant. The defendant refused to cooperate with the defense psychologist who testified in support of the insanity defense, interrupted the proceedings to the point where he was removed from the courtroom, and refused to return to court for the testimony of the People's psychiatric expert, who did not interview him. The defendant was convicted of two counts of murder in the first degree.
CPL 730.30(1) provides that "[a]t any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person" (CPL 730.30[1]). An "incapacitated person" is defined as a "defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense" (CPL 730.10[1]).
Here, the defendant had been found incompetent on four previous occasions, and an expert had concluded that the defendant would likely decompensate if he stopped taking his medication. Under the circumstances, when confronted with evidence that the defendant was not taking his required medication and was not able to communicate rationally with his attorney, the Supreme Court should have granted the joint applications of the People and the defense to have the defendant examined pursuant to CPL 730.30(1) to determine his fitness to proceed (see People v Peterson, 40 NY2d 1014, 1015; People v Heston, 72 AD3d 701, 702). We note that, while it is for the court to decide whether to order a competency examination, when both the defense and the People agree that a competency examination is warranted, the court should hesitate before disagreeing. In view of the passage of time and the lack of contemporaneous psychiatric reports of the defendant's mental condition at the time of trial, it would be futile to remit the matter for a reconstruction hearing to attempt to determine the defendant's fitness to proceed at that time (see People v Peterson, 40 NY2d at 1015; People v Heston, 72 AD3d at 702; People v Hussari, 17 AD3d 483, 483-484).
Accordingly, we reverse the judgment and remit the matter to the Supreme Court, Richmond County, for further proceedings on the indictment, subject to the Supreme Court's discretion or the motion of either party raising the issue of the defendant's capacity to proceed with the criminal proceedings (see CPL art 730; People v Heston, 72 AD3d at 702; People v Hasenflue, 48 AD3d 888, 891). If the court "is of the opinion that the defendant may be an incapacitated person" (CPL 730.30 [1]), it shall issue an order of examination.
Since there may be a new trial, we note that a defendant found competent to stand trial has the ultimate authority, even over counsel's objection, to reject the use of a psychiatric defense (see People v Petrovich, 87 NY2d 961, 963; People v Colletta, 106 AD3d 927, 928; People v Constas, 59 AD3d 729, 730). Thus, once the Supreme Court determined the defendant to be competent to stand trial, it should not have interfered with that authority by "order[ing]" defense counsel, over the defendant's objection, to present an insanity defense.
In light of our determination, we need not reach the defendant's remaining contention.
SCHEINKMAN, P.J., DILLON, LASALLE and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court